**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| THOMAS ALSTON, | |
| Plaintiff, | |
| v. | Civil Action No. 8:12-cv-03589-AW |
| CAVALRY PORTFOLIO SERVICES, LLC, | |
| Defendant. | |

**MEMORANDUM OPINION**

Pending before the Court is Defendant's Motion to Dismiss. The Court has reviewed the record and deems a hearing unnecessary. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Thomas Alston is a natural person who resides in Maryland. Defendant Cavalry Portfolio Services, LLC ("Cavalry" or "Defendant") is a Delaware LLC that, generally speaking, operates as a debt collector. The gravamen of Plaintiff's Complaint is that Defendant violated his federal statutory and common law rights through abusive debt collection practices.

The dispute traces to July 15, 2011. On that day, Defendant allegedly sent Plaintiff correspondence falsely asserting that Plaintiff had a delinquent credit card account with HSBC Bank Nevada, N.A. ("HSBC"). In this communication, Defendant represented that Plaintiff owed it $449.63. Plaintiff alleges that the debt "arose from services provided by HSBC, which were primarily for family, personal, or household purposes." Doc. No. 2 ¶ 7.

On August 8, 2011, Plaintiff sent Defendant a letter asserting that he did not owe the alleged debt and requesting that Defendant cease further collection efforts unless it could substantiate the debt. In the same month, Defendant allegedly reported the delinquent account to Equifax, Experian, and Transunion ("credit bureaus"). Plaintiff alleges that he "disputed the Cavalry account with the credit bureaus." *Id.* ¶ 9. Plaintiff further alleges that Cavalry verified that the account was being reported correctly and instructed the credit bureaus to continue reporting the collection account.

On October 6, 2011, Defendant sent Plaintiff correspondence purporting to be verification of the debt. The correspondence stated that the HSBC account was opened in July 2010, charged off in May 2011, and had a balance of $455.20. Plaintiff alleges that the only HSBC account he has held was closed in 2005.

Plaintiff again disputed the debt to Defendant. Then, on January 4, 2012, Cavalry sent additional correspondence asserting that Plaintiff owed it money. Although the stated amount was $462.32, Defendant allegedly offered to settle the debt for $369.86.

On July 11, 2012, Plaintiff filed a complaint in this Court arising out of the same subject matter. *Alston v. Cavalry Portfolio Services, LLC et al.*, 8:12-cv-02065-AW (D. Md. 2012). Plaintiff and his apparent relatives filed several other similar cases in the District of Maryland. Plaintiff moved for leave to proceed in forma pauperis ("IFP") and the Court granted his motion. Subsequently, the Court vacated its order. *Id.*, Doc. No. 11. In vacating its prior order, the Court wrote that "Mr. Alston and his family are engaged in an enterprise of Fair Credit Reporting Act litigation, and are profiting from it." *Id.* at 8. The Court directed Alston and his family to pay costs within seven days and warned them that the failure to do would result in dismissal of their cases. Later, due to their failure to pay the required filing fees, the Court dismissed several cases

that Plaintiff and his family had brought without prejudice. *See id.*, Doc. No. 12 at 7. Around this time, Cavalry deleted Plaintiff's collection account.

On November 2, 2012, Plaintiff commenced this action in state court. Plaintiff asserts three claims: (1) violation of the Fair Debt Collection Practices Act ("FDCPA"); (2) violation of the Fair Credit Reporting Act ("FCRA"); and (3) defamation. Defendant removed the case on December 6, 2012. Defendant moved to dismiss roughly a week after removal. Doc. No. 7. Plaintiff responded and the matter is ripe for resolution.

## II.     STANDARD OF REVIEW

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In two recent cases, the U.S. Supreme Court has clarified the standard applicable to Rule 12(b)(6) motions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). These cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (quoting Fed. R. Civ. P. 8(a)(2)). This showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In deciding a motion to dismiss, the court should first review the complaint to determine which pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949–50. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. In so doing, the court must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County*

*Commissioners*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual

allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations

devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847

(4th Cir. 1979).

### III.   LEGAL ANALYSIS

### A.   FDCPA

*1.     Failure to State a Claim*

Generally, "[t]o succeed on a FDCPA claim a plaintiff must demonstrate that (1) the

plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant

is a debt [ ] collector as defined by the FDCPA, and (3) the defendant has engaged in an act or

omission prohibited by the FDCPA." *Stewart v. Bierman*, 859 F. Supp. 2d 754, 759–60 (D. Md.

2012) (alteration in original) (citations and internal quotation marks omitted). Under the FDCPA,

a consumer debt "means any obligation or alleged obligation of a consumer to pay money arising

out of a transaction in which the money, property, insurance, or services which are the subject of

the transaction are primarily for personal, family, or household purposes, whether or not such

obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). Therefore, to establish a claim

under the FDCPA, plaintiffs must allege and prove that the subject of the debt is primarily for

"personal, family, or household purposes." *See id.*; *see also Boosahda v. Providence Dane LLC*,

462 Fed. App'x 331, 335 (4th Cir. 2012).

In this case, Plaintiff inadequately alleges that the subject of the debt at issue is for

personal, family, or household purposes. Plaintiff's main allegation to support the conclusion

that the debt was consumer in nature is that it "arose from services provided by HSBC, which

were primarily for family, personal, or household purposes." Doc. No. 2 ¶ 7. Arguably,

Plaintiff's allegations also support the inferences that (1) the credit card was in Plaintiff's personal name and that (2) Defendant reported the debt to Plaintiff's personal credit report. *See id.* ¶¶ 6, 10. But the allegation that the debt was "primarily for family, personal, or household purposes" warrants no weight as it is merely a "formulaic recitation of the elements of a cause of action." *See Twombly*, 550 U.S. at 555. Nor do the inferable allegations that the credit card was in Plaintiff's personal name and reported to his personal credit report create a plausible inference that the subject of the debt was for personal, family, or household purposes. To be sure, a person could just as readily use a credit card in his or her name to incur, among other things, business expenses. And the allegation that Defendant reported the debt to Plaintiff's personal credit report lacks significance because the debt collector's treatment of the debt says little about whether it arose from consumer purposes. *See Boosahda*, 462 Fed. App'x at 335 (fact that debt collector initiated suit against debtor in debtor's personal capacity not dispositive "because a person can be sued in his or her individual capacity even for business debts"); *cf. Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072, 1075 (9th Cir. 2001) (citation and internal quotation marks omitted) (courts should pay particular attention to the "purpose for which the credit was extended" to determine whether it is primarily consumer or commercial in nature). In short, Plaintiff insufficiently states that the debt at issue was consumer in nature.

2.      *Statute of Limitations*

Alternatively, Defendant argues that Plaintiff's FDCPA claim is time-barred. The FDCPA's statute of limitations provides as follows: "An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). This Court has considered

when the FDCPA's limitations period begins to run and has held that "the limitations period for FDCPA claims begins from the date of the first violation, and subsequent violations of the same type do not restart the limitations period." *Fontell v. Hassett*, 870 F. Supp. 2d 395, 404 (D. Md. 2012) (citation omitted); *accord Reid v. New Century Mortg. Corp.*, Civil Action No. 8:12–cv–02083–AW, 2012 WL 6562887, at *4 (D. Md. 2012) (citation omitted). Other district judges have reached the same conclusion. *See, e.g.*, *Reese v. JPMorgan Chase & Co.*, 686 F. Supp. 2d 1291, 1306–07 (S.D. Fla. 2009); *Wilhelm v. Credico, Inc.*, 455 F. Supp. 2d 1006, 1009 (D.N.D. 2006) (citing cases); *Martin v. Sessoms & Rogers, P.A.*, No. 5:09–CV–480–D, 2010 WL 3200015, at *3–4 (E.D.N.C. Aug. 12, 2010) (citing cases).

Several other district judges, both inside and outside this District, have reached the opposite conclusion. These cases propose that subsequent violations based on the same underlying debt constitute new violations for statute of limitations purposes under the FDCPA. *See, e.g.*, *Akalwadi v. Risk Mgmt. Alts., Inc.*, 336 F. Supp. 2d 492, 501 (D. Md. 2004); *Young v. Thieblot Ryan, P.A.*, Civil Action No. ELH–11–01562, 2012 WL 6698632, at *5 n.10 (D. Md. Dec. 21, 2012); *Boccone v. Am. Express Co.*, Civil Action No. RDB 05-3436, 2007 WL 2914909, at *4 (D. Md. Oct. 4, 2007); *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1360 (S.D. Fla. 2000). In an unpublished, per curiam opinion, the Sixth Circuit embraced this view. *Purnell v. Arrow Fin. Servs., LLC*, 303 Fed. App'x 297, 301, 303 (6th Cir. 2008) (collecting cases). However, even these cases hold that communications outside of the one-year window are not actionable.

In this case, Plaintiff acknowledges that he received Defendant's July 15, 2011 and October 19, 2011 correspondences more than one year before he filed suit on November 2, 2011. However, Plaintiff contends that Defendant's communication of January 4, 2012 constituted a

new FDCPA violation and occurred within one year of his filing of the suit. Defendant concedes

that Plaintiff received the January 4, 2012 communication within one year of filing suit.

Therefore, under all the authority cited above, the FDCPA's one-year statute of limitations bars

Plaintiff from founding his FDCPA claim on the July 15 and October 19 communications.

This leaves the question whether the January 4, 2012 communication is actionable.

Although the Court is tempted to follow *Fontell*, the Court declines to hold at this time that the

January 4 correspondence fails to constitute a new violation. Instead, the Court will grant

Plaintiff leave to amend his FDCPA claim, which is otherwise facially implausible. If and when

Plaintiff states a facially plausible FDCPA claim, the Court will decide whether *Fontell* and the

related line of cases dictate dismissal of his FDCPA claim on statute of limitations grounds.

## B.      FCRA

Plaintiff asserts a claim under section 1681s-2(b) of the FCRA. "Section 1681 s–2(b)

outlines the duties a furnisher of information has when given notice of a dispute concerning

inaccurately reported information." *Ausar-El v. Barclay Bank Del.*, Civil No. PJM 12–0082,

2012 WL 3137151, at *3 (D. Md. July 31, 2012) (citation omitted). "Furnishers of information

typically are credit card issuers, auto dealers, department and grocery stores, lenders, utilities,

insurers, collection agencies, and government agencies." *Id.* (citation and internal quotation

marks omitted). "Under § 1681s–2(b), a furnisher . . . is only required to investigate information

it has provided if a consumer reporting agency notifies it that a consumer has contacted the

agency and disputed the furnished information." *Id.* (citations omitted). "Thus, to bring a claim

under § 1681s–2(b), a plaintiff must establish three elements: (1) that he or she notified the

consumer reporting agency of the disputed information, (2) that the consumer reporting agency

notified the defendant furnisher of the dispute, and (3) that the furnisher then failed to investigate and modify the inaccurate information." *Id.* (citations omitted).

In this case, Plaintiff adequately alleges the elements of a section 1681s-2(b) claim. As for element (1), Plaintiff alleges that he disputed the Cavalry account with Equifax, Experian, and Transunion ("credit bureaus"). Regarding element (2), Plaintiff alleges that the credit bureaus forwarded the information to Cavalry, who verified that the account was being reported correctly and instructed the credit bureaus to continue reporting the collection account. Plaintiff further alleges that, after it verified the account to the credit bureaus, Cavalry sent Plaintiff a letter purporting to be verification of the debt. As to element (3), Plaintiff alleges that he challenged the debt verification letter in correspondence and that, despite two requests, Cavalry never provided him with documentation substantiating the debt. Plaintiff also alleges that Cavalry tried to settle the debt with him once before ultimately deleting the account. Taken as true and construed in the most favorable light, these allegations suffice to state a cognizable section 1681s-2(b) claim.

Cavalry responds that Plaintiff inadequately avers that it failed to investigate and modify the allegedly inaccurate information. Specifically, Cavalry asserts that Plaintiff's averment that it failed to do so is a legal conclusion that warrants no weight under the plausibility pleading standard. This is an unduly restrictive reading of Plaintiff's Complaint. Plaintiff also alleges that he challenged the debt to both Cavalry and the credit bureaus; that Cavalry failed to provide documentation or any other evidence substantiating the debt; and that, after offering a settlement, Cavalry deleted the account. Therefore, Plaintiff's allegations regarding his section 1681s-2(b) claim amount to more than unsupported legal conclusions. Accordingly, Plaintiff has stated a facially plausible section 1681s-2(b) claim.

C.        **Defamation**

Defendant argues that the FCRA preempts Plaintiff's defamation claim. Defendant relies

on section § 1681t(b) of the FCRA to support this argument. Pertinently, this section provides as

follows:

No requirement or prohibition may be imposed under the laws of any State—

(1) with respect to any subject matter regulated under—

***

(F) section 1681s-2 of this title, relating to the responsibilities of

persons who furnish information to consumer reporting agencies, . . . .

15 U.S.C. § 1681t(b). Defendant further asserts that Plaintiff bootstraps his defamation claim

onto his section 1681s-2(b) claim and concludes that section 1681t(b) preempts it.

Plaintiff responds that defamation claims are subject to section 1681h(e) of the FCRA,

not section 1681t(b). In relevant part, section 1681h(e) provides as follows:

[N]o consumer may bring any action or proceeding in the nature of defamation,
invasion of privacy, or negligence with respect to the reporting of information
against any consumer reporting agency, any user of information, or any person
who furnishes information to a consumer reporting agency, based on information
disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on
information disclosed by a user of a consumer report to or for a consumer against
whom the user has taken adverse action, based in whole or in part on the report
except as to false information furnished with malice or willful intent to injure
such consumer.

15 U.S.C. § 1681h(e). Plaintiff then cites a Judge Chasanow opinion for the proposition that "§

1681t(b) pre-empts only state statutes, whereas § 1681h(e) pre-empts state common law."

*Beuster v. Equifax Info. Servs.*, 435 F. Supp. 2d 471, 478 (D. Md. 2006). *Beuster* is a carefully

reasoned opinion, and the Court has found no published authority in this District contradicting its

conclusion. Thus, the Court concludes that section 1681h(e) applies to Plaintiff's defamation claim.

The next issue is whether section 1681h(e) preempts Plaintiff's defamation claim. *Beuster* establishes a relatively low bar for stating a cognizable defamation claim in face of section 1681h(e). *Beuster* declares that section 1681h(e) comes into play where the plaintiff's "defamation claim involves the reporting of information, and is brought against a person who furnished information to a consumer reporting agency." 435 F. Supp. 2d at 479. *Beuster* then observes that plaintiffs may aver malice generally for the purpose of defamation claims. *See id.* at 480 (citations omitted). Here, Plaintiff alleges that his defamation claim involves Cavalry's (the furnisher's) reporting of information to credit bureaus (consumer reporting agencies). Plaintiff also alleges that (1) "Cavalry intentionally and maliciously instructed the credit bureaus to report publicly that Plaintiff had a collection account" and that Cavalry later deleted the account. Doc. No. 2 ¶¶ 24, 29. Therefore, under *Beuster*, Plaintiff has stated a cognizable defamation claim.[1]

Defendant insists that, by its letter, section 1681h(e) does not apply to Plaintiff's defamation claim. In essence, Defendant argues Plaintiff's defamation claim is not based on information disclosed "pursuant to section 1681g, 1681h, or 1681m" of the FCRA or "by a user of a consumer report to or for a consumer against whom the user has taken adverse action." *See* 15 U.S.C. § 1681h(e). Assuming its truth, this observation would seem to undercut Defendant's argument. If the preemption provision that applies to common law defamation claims does not apply to Plaintiff's defamation claim, then it is hard to see how the FCRA preempts Plaintiff's

---

[1] The Court is aware that *Beuster* was decided before *Twombly* and *Iqbal*. Yet the Court concludes that Plaintiff's claim is cognizable under the plausibility pleading standard, partly because courts must construe pro se pleadings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

defamation claim. Therefore, although the Court is not discounting this possibility, Defendant's

arguments have yet to compel this conclusion.

**IV.      CONCLUSION**

        For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART**

Defendant's Motion to Dismiss. A separate Order memorializing the Court's rulings follows.

| | |
|---|---|
| February 22, 2013 | /s/ |
| Date | Alexander Williams, Jr. |
| | United States District Judge |